**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beatriz Vielma-Benavides, | No. CV-26-01598-PHX-RM |
| Petitioner, | **ORDER** |
| v. | |
| Kristi Noem, et al., | |
| Respondents. | |

Petitioner Beatriz Vielma-Benavides challenges her immigration detention under 28 U.S.C. § 2241.  (Doc. 1.)  For the following reasons, the § 2241 Petition will be granted to the extent Petitioner requests a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

## I.    Background

Petitioner is a native and citizen of Venezuela who entered the United States without inspection on December 6, 2023, and was apprehended by the United States Border Patrol. (Doc. 1 at 3, 5; Doc. 8-1 at 1-2.)  On December 8, 2023, Petitioner was issued a Notice to Appear that charged her with violating Section 212(a)(6)(A)(i) of the Immigration and Nationality Act.  (Doc. 8-1 at 2.)  Petitioner was then released on her own recognizance. (*Id.*)  On November 21, 2025, Petitioner was arrested in Utah for unlawful detention and domestic violence in the presence of a child.  (*Id.*)  Immigration and Customs Enforcement ("ICE") took Petitioner into custody on February 10, 2026.  (*Id.*)  Petitioner alleges in her

§ 2241 Petition that her prolonged detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that her detention—including her re-detention without a pre-deprivation hearing—violates due process. (Doc. 1.)

In their Response to the § 2241 Petition, Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225, and that she was not entitled to a pre-deprivation hearing prior to her re-arrest and re-detention. (Doc. 8.) On April 16, 2026, Magistrate Judge Deborah M. Fine issued a Report and Recommendation ("R&R") (Doc. 18), recommending that the § 2241 Petition be granted and Petitioner be provided a bond hearing pursuant to 8 U.S.C. § 1226(a). On April 21, 2026—prior to the expiration of the period for filing objections to the R&R—an immigration judge held a bond hearing. (Doc. 21 at 2; Doc. 21-1.) The immigration judge noted that the R&R is not a final order of the United States District Court; denied bond for lack of jurisdiction based on a finding that Petitioner is subject to mandatory detention; and in the alternative stated that he would deny bond on the grounds of both dangerousness and flight risk. (Doc. 21-1.)

Petitioner then filed a Motion to Enforce Judgment, asking the Court to order her release or to require a new bond hearing in front of a different immigration judge at which the Government would bear the burden of proving dangerousness or flight risk by clear and convincing evidence. (Doc. 19.) Respondents filed a Response (Doc. 21), and Petitioner filed a Reply (Doc. 22).[1] In their Response, Respondents argue that placing the burden of proof upon the alien in § 1226 bond hearings facially satisfies due process, and this Court has no authority to shift the burden to the government. (Doc. 21 at 2-3.) Respondents further argue that this Court has no authority to second guess the immigration judge's weighing of the evidence during Petitioner's bond hearing. (*Id.* at 4-5.)

II.    **Discussion**

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). As discussed below, the Court accepts the R&R's finding that Petitioner's detention is governed by 8

---

[1] The Reply was erroneously titled and docketed as a second Motion to Enforce Judgment.

U.S.C. § 1226 rather than § 1225 (Doc. 18), but the Court modifies the R&R's recommended relief.

## A. Detention Under 8 U.S.C. § 1225

Respondents did not object to the R&R, instead providing Petitioner with a bond hearing under 8 U.S.C. § 1226—as recommended in the R&R—prior to the expiration of the period for filing R&R objections. The Court therefore finds that Respondents have abandoned and waived any argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225, and the Court accepts and adopts the R&R's finding that Petitioner's detention is governed by § 1226. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").

Even if Respondents had not abandoned their prior contention that Petitioner is subject to mandatory detention under § 1225, the Court would find under de novo review that Petitioner's detention is governed by § 1226, based on the reasoning set forth in *Echevarria v. Bondi*, CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282 (D. Ariz. 2025).

## B. *Zadvydas* and Detention Under 8 U.S.C. § 1231

Petitioner alleges in her Petition that her detention violates *Zadvydas*, but the Court agrees with the R&R that *Zadvydas* is inapplicable. After the entry of a final removal order, there is a 90-day period during which the alien ordered removed must be detained. 8 U.S.C. § 1231(a)(2)(A). If removal does not occur during the 90-day period, further detention is statutorily authorized under certain circumstances. 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Court held that detention beyond the 90-day removal period is presumptively reasonable for 6 months; if an alien shows after the conclusion of the 6-month period that there is no significant likelihood of his removal in the reasonably foreseeable future, however, she should be released. *Zadvydas*, 533 U.S. at 701.[2] The Supreme Court's

---

[2] The 6-month presumptively reasonable period includes the 90-day statutory removal period. *Ma v. Ashcroft*, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001).

holding in *Zadvydas* is confined to § 1231(a)(6).  *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018).

Here, there is no indication that Petitioner is subject to a final removal order, and therefore she is not being detained under § 1231.  Accordingly, *Zadvydas* does not apply.

**C.  Due Process**

Many district courts have held that individuals like Petitioner who were released from immigration detention are entitled to a pre-deprivation hearing prior to any re-arrest or re-detention as a matter of due process.  *See*, *e.g.*, *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021 (N.D. Cal. 2025) (holding that petitioner released on bond had protected liberty interest in continued release); *Tinoco v. Noem*, 818 F. Supp. 3d 1141 (E.D. Cal. Dec. 14, 2025) (granting petitioner's temporary restraining order for immediate release from custody where petitioner was released on an order of release on recognizance and later re-detained without a bond hearing); *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182-84 (D. Haw. 2025) (same); *Aguirre Solis v. Noem*, 2:26-cv-00053-RFB-EJY, 2026 WL 396432, at *2, *5-8 (D. Nev. Feb. 12, 2026) (concluding petitioner's re-detention after release on recognizance without a hearing and opportunity for release was unlawful under the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment and ordering his immediate release from detention).

The three-pronged test articulated in *Mathews v. Eldridge* explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  424 U.S. 319, 332, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

- 4 -

As to the first factor, being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529-30 (2004) (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention). An individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process"). Here, Petitioner has been detained for approximately four months, and she was detained for over two months before receiving a bond hearing. Although "the longer the duration of detention, the greater the deprivation of a noncitizen's private interest," *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183 (D. Colo. 2024), courts have found that the private interest in freedom from detention is so weighty that even detention of less than three months without § 1226(a) process means that the first *Mathews* factor must cut in a detainee's favor. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1243 (D.N.M. 2025); *see also Colmenares-Pinto v. Warden of Golden State Annex Ice Det. Facility*, No. 1:26-CV-00812 DAD SCR, 2026 WL 923804 at *5 (E.D. Cal. Apr. 6, 2026), *report and recommendation adopted*, No. 1:26-CV-00812-DAD-SCR, 2026 WL 1430913 (E.D. Cal. May 21, 2026). Given that Petitioner was detained for over two months without receiving any § 1226(a) process, the Court finds that the first *Mathews* factor favors Petitioner.

As to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when a noncitizen is re-detained without "any bond or custody redetermination hearing." *Dushyant v. Albarran*, No. 1:26-cv-00502-JLT-SKO (HC), 2026 WL 682887, at *4 (E.D. Cal. Mar. 11, 2026), *report & recommendation adopted in relevant part*, 2026 WL 785831 (E.D. Cal. Mar. 20, 2026) (ordering immediate release). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk

of flight or danger to the community." *Id.* (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)).

Here, Petitioner was released on her own recognizance after immigration officials necessarily determined that she was not a flight risk or a danger to the community, and she was then re-arrested without a pre-deprivation hearing and detained for over two months without any bond hearing at which a neutral arbiter could determine whether changed circumstances had rendered her a flight risk or a danger to the community. When Petitioner was afforded a bond hearing on April 21, 2026, the immigration judge found Petitioner subject to mandatory detention and accordingly denied bond for lack of jurisdiction. (Doc. 21-1 at 1.) Although the immigration judge made an alternative finding that Petitioner is a flight risk and a danger to the community (*id.*), the risk of erroneous deprivation of liberty remains high because that finding was made post hoc and as an alternative finding to the immigration judge's primary conclusion that Petitioner was not entitled to a bond hearing at all. Ordering a new bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger or the community will reduce the risk of the continuing erroneous deprivation of Petitioner's liberty interests. The second *Mathews* factor weighs in favor of Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose minimal cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Respondents' interest here is lower because Petitioner was previously released on bond after immigration officials necessarily determined that she was not a flight risk or a danger to the community. *See Pinchi v. Noem*, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025); *see also Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. July 11, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to process, and that process should have been provided before petitioner was detained.");

*Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at \*7-9 (W.D. Wash. Mar. 12, 2026) (concluding that re-detention of petitioners who had been released on their own recognizance violated due process under the *Mathews* framework because petitioners had "established liberty interests," "the absence of pre-deprivation procedures in their re-detentions created an unacceptably high risk of erroneous deprivations," and "the governmental interest in their re-detention without adequate process [was] minimal or non-existent").

As discussed above, the immigration judge at Petitioner's April 21, 2026 bond hearing made an alternative finding that Petitioner is a flight risk and a danger to the community. (Doc. 21-1 at 1.)  The Government's interest in detaining a noncitizen subject to 8 U.S.C. § 1226 outweighs the noncitizen's liberty interests if the noncitizen "is a flight risk or a danger to the community." *Velasquez Salazar*, 806 F. Supp. 3d at 1244.  However, shifting the burden of proof "to the Government to justify detention may actually promote the Government's separate interest in managing overcrowding at [Department of Homeland Security] detention facilities." *Id.*  Furthermore, shifting the burden of proof does not "impose an unreasonable administrative or fiscal burden on the Government," in light of the vast resources at the Government's disposal to gather information about individuals' eligibility for bond. *Id.*

Weighing the *Mathews* factors, the Court finds that the procedures so far afforded to Petitioner have not been sufficient to comport with due process.

**D. Remedy**

In general, during a bond hearing conducted under § 1226(a), "the burden is on the noncitizen to demonstrate that their 'release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Velasquez Salazar*, 806 F. Supp. 3d at 1242 (quoting 8 C.F.R. § 236.1(c)(8)).  The Ninth Circuit held in *Rodriguez Diaz v. Garland* that placing the burden of proof upon a noncitizen during a § 1226(a) bond hearing is facially constitutional. 53 F.4th 1189, 1213 (9th Cir. 2022). However, "in so holding, [the *Rodriguez Diaz* court] [did] not foreclose all as-applied

challenges to § 1226(a)'s procedures." *Id.* "Individualized circumstances" may "warrant[] additional procedures[.]" *Id.*

Given that Petitioner had a liberty interest in her release, was re-arrested without a pre-deprivation hearing, and was held in custody without any bond hearing for over two months, the Court finds that the individualized circumstances of Petitioner's case warrant additional procedures beyond those provided for by §1226(a). Specifically, the Court finds that due process requires the Government to bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011), *abrogated in part as recognized by Rodriguez Diaz*, 53 F.4th 1189; *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020), *rev'd and remanded on other grounds,* 596 U.S. 543 (2022).

**IT IS ORDERED**:

1. Magistrate Judge Fine's Report and Recommendation (Doc. 18) is **partially adopted and partially modified**, as set forth above.

2. The Petition for Writ of Habeas Corpus (Doc. 1) is **granted** to the extent Petitioner requests a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

3. Respondents must provide Petitioner a new bond hearing within **seven (7) days** of the date this Order is filed. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

4. Respondents must provide a notice of compliance within **two (2) days** of Petitioner's bond hearing or release.

5. The Clerk of Court is directed to deny as moot any pending Motions (Docs. 11, 19, 22), enter judgment in favor of Petitioner, and close this case.

Dated this 12th day of June, 2026.

_____
Honorable Rosemary Márquez
United States District Judge